1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,        )     Criminal No. 06-CR-0151-L
                                       )
12                 Plaintiff,          )     **ORDER GRANTING**
                                       )     **DEFENDANT'S MOTION FOR NEW**
13                                     )     **TRIAL**
     v.                                )
14                                     )
                                       )
15   JOHN C. FITZGERALD,               )
                                       )
16                 Defendant.          )
                                       )
17                                     )
                                       )
18   _____ )

19          Following oral argument on Defendant's Motion for New Trial, the Court took under

20   submission several issues raised in Defendant's motion.[1]  The Court has now fully considered

21   the submissions and argument of the parties, and applicable authorities, and concludes that a new

22   trial is warranted.

23

24   _____

25          [1]  A hearing was held on Defendant's motion on May 21, 2007.  At that time, the Court
     ruled that a new trial was not warranted on the basis of: 1) the Court's exclusion of the Ryder
26   plan opinion letter at trial; 2) the Court's failure to give a good faith jury instruction; and 3) the
     Court's exclusion of Defendant's January 22, 2002 letter to Dr. Kawesch.  The Court also held
     that the trial evidence was sufficient to support the jury's verdict.
27          The Court reserved ruling on Defendant's claims that a new trial is required on the basis
     of the exclusion of evidence regarding the content of the advice given to Defendant by Ryder,
28   the introduction of evidence concerning Jesse Cota, and the Government's failure to disclose
     *Brady* material.

06cr0151

1   The Court harbors serious concerns regarding the fairness of Defendant's trial due to the
2   introduction of marginally relevant and prejudicial evidence concerning the indictment of Jesse
3   Cota and Defendant's association with the Tax People and the Government's failure to disclose,
4   prior to trial, the transcripts of the recorded conversations between Ernest Ryder and Dr.
5   Kawesch.  Given that the verdict in this case rested upon a credibility determination between
6   Defendant Fizgerald and Dr. Kawesch, and these factors bore directly on the credibility of these
7   witnesses, the Court cannot express any confidence that these errors did not affect the jury's
8   verdict.

9       I.    <u>Extrinsic Evidence Regarding Jesse Cota and the Tax People</u>.

10       During the cross-examination of Defendant Fitzgerald, the Government elicited testimony
11   that during the 1998 to 2000 timeframe, Defendant worked as a tax preparer for an organization
12   called the Tax Loophole.  (RT 335.)  As a registered tax preparer with the Tax Loophole,
13   Defendant would receive clients through a Kansas company known as the Tax People.  (*Id.* at
14   335-36.)  Defendant ceased to be associated with the Tax People after the company was shut
15   down by the State of Kansas for what Defendant believed was a state of Kansas statutory
16   marketing violation.  (*Id.* at 337-38.)  Although the Government attempted to characterize the
17   Tax People as a "criminal enterprise," Defendant maintained that the company was shut down
18   due to an illegality arising from the company's marketing structure under Kansas state statutes.
19   (*Id.* at 337-38.)

20       Defendant was shown a brochure advertising the Tax People which contains a photograph
21   of Defendant standing with several other people, one of whom Defendant identified as Jesse
22   Cota, a Vista C.P.A. who was a director of the Tax People.  (*Id.* at 340.)  Defendant testified that
23   Mr. Cota had a prepaid audit program through which Mr. Cota would provide clients with audit
24   assistance for a monthly subscription fee.  *Id.*  Defendant testified that he referred some of his
25   clients with high audit risks to Mr. Cota's program after preparing their tax returns.  (*Id.* at 340-
26   41.)

27       The Government then asked Defendant whether he was aware that Mr. Cota was indicted
28   for tax fraud in October of 2004.  (*Id.* at 341.)  Over defense objection, the Government was

06cr0151

1    permitted to ask whether Defendant was aware that the charges against Mr. Cota were regarding

2    his work with the Tax People.  (*Id*.)  Defendant responded that he knew Mr. Cota was indicted,

3    but he didn't know the specifics of the charges.  (*Id*.)

4       Defendant contends that information regarding the criminal tax fraud charges against Mr.

5    Cota was impermissible guilt by association evidence.  The Government responds that this

6    evidence was properly admitted as evidence of Defendant's willfulness and intent to prepare a

7    false income tax return.  The Government maintains that the fact that Defendant was preparing

8    tax returns for clients of an organization which was alleged to have committed tax fraud is

9    relevant to Defendant's state of mind and intent, especially since Defendant's involvement with

10   the Tax People was during the same time period that the tax returns at issue in this case were

11   prepared.

12       In the Court's view, use of such extrinsic evidence to prove Defendant's willfulness and

13   intent is governed by Federal Rule of Evidence 404(b).  However, the Court was never put on

14   notice that 404(b) evidence was intended to be used in this manner, therefore the Court did not

15   engage in the required 404(b) analysis before the evidence was admitted, nor did the Court

16   consider the balance required under Fed. R. Evid. 403.  Moreover, the jury was not provided

17   with any instruction limiting the purpose for which the jury could consider evidence of

18   Defendant's association with the Tax People and Jesse Cota.

19       The government "must carry the burden of showing how proffered evidence is relevant to

20   one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis

21   by which a fact of consequence may be inferred from other acts evidence."  *United States v.*

22   *Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).  Here, the Government did not set forth the

23   basis for its inquiry into Defendant's business relationship with the Tax People and Jesse Cota

24   prior to eliciting testimony regarding these issues.  Had the Court had the opportunity to consider

25   the admissibility of the evidence under Rule 404(b), it is unlikely the evidence would have been

26   allowed.

27       A four-part test guides whether evidence should be admitted under Rule 404(b):

28   "evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material

1   point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a

2   finding that defendant committed the other act; and (4) (in cases where knowledge and intent are

3   at issue) the act is similar to the offense charged." *United States v. Mayans*, 17 F.3d 1174, 1181

4   (9th Cir. 1994). In this case, the admission of the evidence would likely have failed on the

5   strength of the first prong alone as the evidence bore little discernable relationship to any

6   material point at issue in this case.

7           As a preliminary matter, it should be noted that Defendant's business relationship with

8   the Tax People and Jesse Cota had no direct connection to the events charged in the indictment

9   and was not directly probative of any element of the charged crime. Nor did the extrinsic

10  evidence of Defendant's relationship with the Tax People and Mr. Cota inferentially shed much

11  light on Defendant's intent at the time he prepared Dr. Kawesch's tax returns. Although the

12  Government suggests that the fact that Defendant prepared tax returns for an organization

13  alleged to have committed tax fraud is probative of Defendant's specific intent to violate the law,

14  Defendant's testimony established he had no knowledge of the nature of the charges against Mr.

15  Cota. Furthermore, Mr. Cota was not indicted until 2004, four years after the relevant time

16  period in this case. Plus, at the time of Defendant's testimony in January, 2007, Mr. Cota had

17  not yet been convicted of any crime, he had only been indicted. There is no evidence suggesting

18  Defendant had any knowledge of alleged fraudulent activities concerning the Tax People or Mr.

19  Cota prior to 2004. Thus, the Court fails to perceive any logical connection between

20  Defendant's intent in the preparation of Dr. Kawesch's tax returns in 1998 through 2000 and

21  Defendant's preparation of tax returns for clients of an organization that was subsequently

22  alleged to have committed tax fraud. To the contrary, the Government's suggestion that

23  Defendant's conduct was willful in this case because he also worked for the Tax People, an

24  allegedly fraudulent organization as evidenced by the Cota indictment, appears to be propensity

25  evidence prohibited under Rule 404(b). *See e.g. United States v. Bradley,* 5 F.3d 1317, 1320 (9th

26  Cir. 1993) (noting that guilt or innocence must be "established by evidence relevant to the

27  particular offense being tried, not by showing that the defendant has engaged in other acts of

28  wrongdoing.").

06cr0151

1    Furthermore, even if the evidence had been marginally probative of intent, the Court

2    failed to weigh the probative value of the evidence against the danger of undue prejudice to the

3    defendant as required under Rule 403.  Even when the Government establishes relevancy of

4    other act evidence, it is only admissible after the Government demonstrates that, on balance, its

5    probative value is not substantially outweighed by the danger of unfair prejudice to the

6    defendant.  *Id.*  Although the Court was not required to provide a detailed or even a mechanical

7    recitation of the Rule 403 factors, it was required to apply Rule 403 at this stage.  *Mayans*, 17

8    F.3d at 1183.  The Court erred in failing to undertake any Rule 403 balancing with respect to the

9    Cota evidence and views this failure as significant given the tenuous probative force of the

10   evidence and the real possibility of undue prejudice arising by virtue of Defendant's association

11   with an organization characterized by the Government as a "criminal enterprise" and his

12   business relationship with an indicted tax cheat — a tax cheat indicted for charges involving the

13   same company Defendant was associated with at the time he prepared Dr. Kawesch's tax

14   returns.

15   Finally, even if the evidence had been properly admitted under Rules 404(b) and 403, the

16   Court failed to instruct the jury that the evidence could be considered only as it related to

17   Defendant's intent, and for no other purpose.  When evidence is admitted under Rule 404(b), the

18   trial court "should ordinarily instruct the jury carefully as to the limited purpose for which the

19   evidence is admitted."  *United States v. Sangrey*, 586 F.3d 1312, 1314 (9th Cir. 1978).  By failing

20   to instruct the jury as to the limited purpose of admission of the evidence regarding the

21   allegations of fraud against the Tax People and Jesse Cota, the Court effectively allowed the jury

22   to consider Defendant's participation in uncharged acts in reaching its verdict.

23   Considering the foregoing errors, the Court finds that the interest of justice requires that

24   Defendant be afforded a new trial.  While it obviously cannot be determined with precision the

25   affect this evidence had upon the verdict in this case, the Court notes that the strength of the

26   Government's case against Defendant was not overwhelming.  The Government's case was

27   dependent on the testimony of Dr. Kawesch, a cooperating witness who received benefits from

28   the Government, and Dr. Kawesch's covertly recorded statements of Defendant Fitzgerald,

1   statements for which Defendant Fitzgerald offered a plausible contrary interpretation to that

2   proffered by the Government.  The defense case was dependent upon Defendant's testimony that

3   he lacked specific intent and relied on Ernest Ryder and Dr. Kawesch in preparing the tax

4   returns at issue.  Because the case revolved exclusively upon the jury's determination of

5   Defendant's credibility, the Court is not confident that the extrinsic act evidence did not affect

6   the outcome of the trial.

7       II.    *Brady* violation.

8       In addition to the errors discussed above, the Court finds that a new trial is also warranted

9   on the basis of the Government's failure to disclose the tape recorded conversations between Dr.

10  Kawesch and Ernest Ryder.   The Court finds that the tapes constituted *Brady* material and thus

11  should have been disclosed to the defense prior to trial.

12      The law governing the disclosure by the prosecution of evidence beneficial to a defendant

13  is well-settled.  *United States v. Sarno*, 73 F.3d 1470, 1504 (9th Cir. 1995).  The suppression by

14  the government of material favorable evidence violates due process and requires that the tainted

15  conviction be vacated.  *Id.*, citing *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v.*

16  *Bagley*, 473 U.S. 667 (1985).  The rule of *Brady* and its progeny applies even in the absence of a

17  defense request for favorable evidence and extends to both exculpatory and impeachment

18  evidence.  *Id.,* citing *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) and *Bagley*, 473 U.S. at 682.

19  Suppressed evidence is held to be material "if there is a reasonable probability that, had the

20  evidence been disclosed to the defense, the result of the proceeding would have been different."

21  Id., quoting *Kyles*, 514 U.S. at 433.  A "reasonable probability" of a different result is shown

22  when the Government's evidentiary suppression "undermines confidence in the outcome of the

23  trial."  *Id.*

24      Here, the Government suggests that the Kawesch/Ryder tapes were not *Brady* material

25  because Defendant Fitzgerald was not present during the conversations.  The Government argues

26  that Ryder's belief in the legitimacy of the plan is not relevant to the determination of Defendant

27  Fitzgerald's belief.  The Government also contends that Ryder's statements to Kawesch which

28  were consistent with Defendant's trial testimony would not have been admissible because they

would have improperly bolstered Defendant's testimony and were not admissible as prior

consistent statements.  The Government further maintains that the Ryder statements were

unreliable because they were made at a time when he had a motive to lie.  Finally, the

Government argues that Defendant could not have offered statements by Ryder to Kawesch in

order to prove that he, the defendant, believed the deferred compensation plan was valid.

The Government's arguments against the admissibility of the Kawesch/Ryder

conversations overlook the fact that Kawesch was a testifying witness at trial and the subject of

his conversations with Ryder was the preparation of the very same tax returns charged in the

indictment.  Thus, while Ryder's belief in the legitimacy of the plan was not relevant to the

jury's determination, *Kawesch's* belief in the legitimacy of the plan was.  Indeed, Kawesch pled

guilty on the basis that he knew the deferred compensation plan was a sham at the time he

entered it.  (Gov't Trial Ex. 1-3 at 5.)  Kawesch's recorded conversations with Ryder contradict

this evidence because Ryder repeatedly informed Kawesch that the plan is legitimate.

The Kawesch/Ryder tapes also contain evidence which would have corroborated

Defendant's trial testimony, and would have been admissible through Dr. Kawesch.  For

example, on the tape, Kawesch tells Ryder that he told Ryder *and* Defendant Fitzgerald to fix the

tax returns, thus acknowledging Ryder's role in zeroing out his taxes for 1999.  At trial,

Kawesch testified that he only told Fitzgerald to fix the tax return, and that Fitzgerald said he

would talk to Ryder. (RT 179.)  This is significant because Defendant's testimony was that he

received calls from Kawesch *and* Ryder authorizing the deductions claimed on the tax returns.

By the Government's own admission, the Kawesch/Ryder conversations also corroborate

Defendant's handwritten notes (Gov't Resp. to Def.'s Mot. For New Trial 14:1-2), notes which

the Government suggested at trial were created for cover.  (RT 326:3-7 ("It appears that this is

you writing this down saying well, this is Kawesch's idea versus Ernie Ryder or the other

discussions that took place, and you had no documentation so just in case the IRS comes

looking, I have this note in my file?").)

The Court is not persuaded that the fact that the Kawesch/Ryder recordings were made

after Kawesch's house was raided by federal agents would bar admission of the tapes on

1   reliability grounds.  First of all, the Court notes that the Kawesch/Fitzgerald tapes were recorded

2   under precisely the same circumstances and the Government voiced no objection to the

3   reliability of those tapes.  Indeed, it is the Court's recollection that the defense moved to

4   preclude the Kawesch/Fitzgerald tapes on the grounds that they were made after the events

5   charged in the indictment and the Court ruled that the timing of the statements would affect the

6   weight of the evidence, rather than its admissibility.  The same holds true with the

7   Kawesch/Ryder tapes, while Ryder may have realized that his statements would be recorded as a

8   result of the federal investigation, it would have been appropriate to let the jury determine the

9   proper weight to be afforded the evidence.

10         Furthermore, the Kawesch/Ryder conversations would have provided potential

11  impeachment material with respect to Dr. Kawesch's trial testimony even if the jury believed

12  that Ryder's statements were made to protect himself during the criminal investigation.  The

13  tapes demonstrate that Ryder repeatedly explained to Kawesch the reasons why the Ryder plan

14  was legitimate and how it was to be properly executed. Had the tapes been disclosed, Defendant

15  potentially could have confronted Kawesch's trial testimony that he knew the deductions were a

16  sham with evidence of Ryder's explanations of the legitimacy of the plan in order to cast doubt

17  upon the reasonableness of Kawesch's trial testimony, or perhaps to demonstrate that it was

18  Kawesch's execution of the plan that was faulty.  Even though Ryder's statements were made

19  after the criminal investigation of Kawesch began, they were made prior to Kawesch's trial

20  testimony and thus would have been relevant to challenge Kawesch's understanding of the plan

21  at the time he testified.

22         In sum, the Court has reviewed the Kawesch/Ryder transcripts and is convinced there are

23  many ways in which the tapes could potentially have been used at trial to impeach Dr. Kawesch

24  and to corroborate critical aspects of Defendant's defense.  Again, because this case essentially

25  came down to a credibility contest between Defendant Fitzgerald and Dr. Kawesch, the Court

26  cannot confidently determine that the failure of the Government to disclose this evidence prior to

27  trial did not affect the verdict.  A *Brady* violation is demonstrated by "showing that the favorable

28  evidence could reasonably be taken to put the whole case in such a different light as to

1  undermine confidence in the verdict." *Kyles*, 514 U.S. at 435.  The Court believes that

2  Defendant has made such a showing in this case.

3
4
      III.    <u>Exclusion of Defendant's Testimony Recounting his Conversations with Ryder and Kawesch</u>.

5        The final unresolved issue raised in Defendant's Motion for New Trial is the Court's

6  exclusion of evidence regarding the advice given to Defendant by Ryder and Kawesch.  In view

7  of *United States v. Moran*, 482 F.3d 1101 (9th Cir. 2007), it would appear that the Court

8  improperly sustained the Government's hearsay objections to the content of what Defendant was

9  told by Ryder.  (RT 294; RT 295.)  However, the Court finds that any error in this regard was

10  harmless as substantial evidence of Defendant's reliance on Ryder was ultimately presented to

11  the jury.  Nevertheless, the Court notes for purposes of retrial that testimony about the

12  defendant's reliance on qualified experts, and the specific advice upon which the defendant

13  claims to have relied, does not constitute hearsay when not offered for the truth of the matter

14  asserted.  *Moran*, 482 F.3d at 1110.

15        IV.    <u>Conclusion</u>.

16        Based upon the foregoing, the Court finds that the interest of justice requires Defendant

17  be afforded a new trial.  Accordingly, Defendant's Motion for New Trial is **HEREBY**

18  **GRANTED**.

19        **IT IS SO ORDERED.**

20

21  DATED:  June 11, 2007

22
                              M. James Lorenz

23                                United States District Court Judge

24

25

26

27

28

06cr0151