UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN C. FITZGERALD,<br><br>    Defendant. | Criminal No. 06-CR-0151-L<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |

Currently before the Court is Defendant's Motion to Dismiss the Indictment. Following extensive briefing and oral argument, the Court took the matter under submission. The Court has now fully considered the submissions and argument of the parties, and applicable authorities, and concludes that the indictment should be dismissed. Accordingly, Defendant's Motion to Dismiss is **GRANTED**.

## I. Background

On January 27, 2006, Defendant was charged in a two count indictment alleging violations of 26 U.S.C. § 7206(2) (Aiding and Assisting in the Filing of a False Income Tax Return). The indictment arose from Defendant's work as a Certified Public Accountant for Dr. Glenn A. Kawesch ("Dr. Kawesch") for the calendar years 1998 and 1999.

Dr. Kawesch testified for the Government at Defendant's trial in January 1997. In fact, he was the prosecution's key witness. Dr. Kawesch died on March 26, 2007.

On January 26, 2007, a jury acquitted Defendant on count one (relating to Dr. Kawesch's 1998 tax return) and found him guilty on count two (relating to Dr. Kawesch's 1999 tax return). Thereafter, Defendant filed a motion for new trial. On June 11, 2007, the Court granted Defendant's motion on two grounds: 1) the introduction of extrinsic evidence concerning Jesse Cota and the Tax People prejudiced Defendant; and 2) the Government's failure to disclose, prior to trial, the transcripts of recorded conversations between Dr. Kawesch and Ernest Ryder (Dr. Kawesch's tax attorney) violated *Brady v. Maryland*, 373 U.S. 83 (1963).

The Government appealed and on May 16, 2008, the Ninth Circuit affirmed this Court's order granting Defendant a new trial. The Court of Appeals held this Court's decision to grant a new trial was proper based on the first ground. Therefore, the Ninth Circuit did not specifically address the *Brady* issue.

The new trial date is currently set for March 24, 2009.

## II. Legal Standard

A district court may dismiss an indictment under either of two theories. First, the court may dismiss an indictment "on the ground of outrageous government conduct if the conduct amounts to a due process violation." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008). Alternatively, "if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *Id.* The court's supervisory powers may be exercised "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). To justify dismissal under the Court's supervisory powers, the government's conduct must be (1) flagrant and (2) cause substantial prejudice to the defendant. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988); *Chapman*, 524 F.3d at 1085.

"[A]ccidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior. *Chapman*, 524 F.3d at 1085. However, a finding of "willful misconduct"

in the sense of intentionality is not required.  Rather, "reckless disregard" satisfies the standard for dismissal.  *Id.*  As the Ninth Circuit explained in *Chapman*: "We have never suggested [] that 'flagrant misbehavior' does not embrace reckless disregard for the prosecutions's constitutional obligations."  *Id.*  In *Chapman*, the Ninth Circuit found the government's failure to produce *Brady* material until mid-trial, its failure to keep track of what had been produced, and its affirmative misrepresentations to the court of full compliance, "supported the district court's finding of 'flagrant' prosecutorial misconduct *even if the documents themselves were not intentionally withheld from the defense*." *Id.* (emphasis added).  The *Chapman* court also noted that the government had "received several indications, both before and during trial, that there were problems with its discovery production and yet it did nothing to ensure it had provided full disclosure . . ." *Id.*

Upon finding flagrant conduct, the court may dismiss the indictment only if the defendant will suffer "'substantial prejudice' and where 'no lesser remedial action is available.'" *Id.* at 1087 (internal citation omitted).  *See also United States v. Ross*, 372 F.3d 1097, 1110 (9th Cir. 2004) (stating "the proper prejudice inquiry is whether the government conduct 'had at least some impact on the verdict and thus redounded to [the defendant's] prejudice'" and noting "this is a less stringent standard than the *Brady* materiality standard").

### III.  Analysis

#### A.  The Government's Conduct Was Flagrant

As an initial matter, this Court has already found that the Government's failure to disclose the tape recorded conversations between Dr. Kawesch and Ernest Ryder constituted a *Brady* violation.  *See* Order Granting Defendant's Motion for New Trial, at 6-8 ("The Court finds that the tapes constituted *Brady* material and thus should have been disclosed to the defense prior to trial.").  Now, the Court further finds that although the Government may not have intentionally withheld the tapes, it recklessly disregarded its discovery obligations in failing to produce them.

For one, the tapes were not produced until after trial, even though Defendant had requested Dr. Kawesch's recorded conversations prior to trial.  *See* Exhibits to Def's Reply, pp.

8-11 (Defendant's December 8, 2006 letter requesting "audio and video taping at both [Dr. Kawesch's] home in [Rancho Santa Fe] and his office, well before he agreed to cooperate.") The Government deemed the request "overly broad" and the information irrelevant, therefore it did not produce the tapes. As it turned out, the tapes were indeed, relevant.[1] If the Government doubted the usefulness of the evidence, it should have "resolve[d] such doubts in favor of full disclosure." *Unites States v. Sudikoff*, 36 F.Supp.2d 1196, 1199 (C.D. Cal. 1999). The Court also notes the Government's apparent reluctance to produce the tapes, even after trial. *See e.g.* Exhibits to Def's Opp. to Gov't Mot. for Reconsideration of the Order Granting New Trial, p.3 (Government's April 5, 2007 letter acknowledging the defense had requested the tapes multiple times, but refusing to produce them stating "I still am unclear how this material is Brady . . ."); Exhibits to Def.'s Reply, p. 14-15 (Government's April 12, 2007 cover letter to transcripts stating "Let me be clear that I am not providing [the tapes] as Brady material, as there is absolutely no exculpatory information contained within these documents. . .").[2]

Second, the Government represented to this Court that it "believed" it turned over the tapes prior to trial, but that claim is not supported by the record. Furthermore, the Government admits that it did not keep a thorough discovery log to keep track of what documents had been disclosed to the defense. Finally, as in *Chapman*, the Government appears unwilling to own up to its conduct. Indeed, even now the Government continues to argue that the tapes were not *Brady* material. *See* Gov't Opp., at 4 ("The government's position continues to be that the Kawesch-Ryder conversations were not Brady material.").

Therefore, the Court finds the *Brady* violation justifies dismissal of the indictment. In *Chapman,* the Ninth Circuit stated that "*Brady* violations are just like other constitutional violations." *Chapman*, 524 F.3d at 1086. Although the remedy is usually a new trial, the court may dismiss the indictment. *Id. See also United States v. Blanco*, 392 F.3d 382, 395 (9th Cir.

---

[1] *See* Order Granting Defendant's Motion for New Trial, at 7.

[2] These letters undermine the Government's claim that if Defendant had requested the tapes mid-trial "he would have been provided with those transcripts immediately." *See* Gov't Opposition, at 8.

2004) (finding the government failed to disclose impeachment material and remanding to district court for further fact finding regarding the extent of the *Brady* violation and noting that on remand the court would have "[a] range of options . . . including at one extreme, dismissal of the indictment for governmental misconduct"); *United States v. Kojayan*, 8 F.3d 1315, 1325 (9th Cir. 1993) (reversing defendants' convictions due to *Brady* violation and remanding to the district court "to determine whether to retry the defendants or dismiss the indictment with prejudice as a sanction for the government's misbehavior").

While the Court finds dismissal is justified due to the *Brady* violation, it notes that the Government's failure to turn over the tapes is not the only troubling conduct in this case. At trial, the Government introduced improper and prejudicial "guilt by association" evidence. That led to this Court's decision to grant Defendant a new trial – a decision affirmed by the Ninth Circuit. Also, Defendant contends he recently discovered additional documents that were not provided to his original trial counsel. The parties expended a considerable amount of effort arguing about whether the documents were previously made available, wether they constitute *Brady* material, and who should bear the blame for any non-disclosure. Suffice it to say that had the Government simply kept a thorough discovery log, this issue might have been avoided.

The Court has reviewed a selection of the recently revealed documents and is convinced that they are relevant and could have been used at trial to impeach Dr. Kawesch. For example, there is a 72 page tax opinion letter from Ernest Ryder to Dr. Kawesch dated March 15, 2001. The letter explains the validity of the deferred compensation plan. Had this letter been available, it could have been used to impeach Dr. Kawesch's statement that the plan was a "sham." Other documents indicate there was regular contact between Dr. Kawesch's office and Ryder's office. This evidence had impeachment value because it is contrary to Dr. Kawesch's taped comments to Defendant suggesting he had little or no communication with Ryder.

The Court understands that the Government did not produce these documents because the parties originally agreed that the validity of the deferred compensation plan was not going to be part of the case. However, the Court notes that the documents certainly became relevant during

the trial. Regardless of whether the Government should be held responsible for the non-disclosure, the problem now is that Defendant has no means of confronting Dr. Kawesch with these documents.

### B. Retrial Will Substantially Prejudice Defendant

The Court finds that at this point, a retrial would substantially prejudice Defendant. First, and foremost, as a result of the *Brady* violation, Defendant was denied an adequate opportunity to impeach Dr. Kawesch.[3] Now, due to the death of Dr. Kawesch, Defendant will never be able to confront him with the tapes, or any of the other recently discovered documents.

The Government seeks to admit Dr. Kawesch's prior testimony under Federal Rule of Evidence 804(b)(1), despite the *Brady* violation. However, admission of Dr. Kawesch's trial testimony presents a confrontation problem. In *Crawford v. Washington*, 541 U.S. 36, 57 (2004), the United States Supreme Court stated "prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." An adequate opportunity to cross-examine means the defense must be given "a full and fair opportunity to probe and expose [] infirmities [in the testimony] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985).

Due to the Government's *Brady* violation, Defendant was unable to present the tapes to the jury. The tapes would have given the jury "information to appraise the bias, motives and credibility of the witness." *Thomas v. Cardwell*, 626 F.2d 1375, 1386 n. 34 (9th Cir. 1980). Without them, the Court cannot find Defendant had an "adequate opportunity" to cross-examine Dr. Kawesch. Further, there is no way to remedy the problem because Dr. Kawesch has died.

---

[3]On Appeal to the Ninth Circuit, the Government conceded that Kawesch-Ryder tapes could have been used to impeach Dr. Kawesch. *See* Government's Opening Brief, at 26 ("[A]lthough the contents of the Kawesch/Ryder tapes and transcripts *could have been used to impeach Kawesch* . . .") (emphasis added). Here, however, the Government contends otherwise. *See* Opposition at 4 ("When the content of the [the Kawesch-Ryder] conversations is compared to all other trial evidence, they are neither exculpatory *nor impeachment material*.") (emphasis added). The Court rejects the Government's current argument and reiterates its prior finding that the tapes "would have provided potential impeachment material with respect to Dr. Kawesch's trial testimony." Order Granting Defendant's Motion for New Trial, at 8.

The Government contends that the confrontation problem can be overcome. The Government proposes that the Court admit Dr. Kawesch's trial testimony and the complete Dr. Kawesch/Ryder tapes. Then, the Government urges, the Court can allow Defendant to "argue that Kawesch's trial testimony was inconsistent with statements made to Ryder during their consensually-recorded conversations." Gov't Opp., at 8. The Court rejects this proposal.

Allowing the defense to point out inconsistencies in the transcripts is not an adequate substitution for cross-examination. Particularly where Defendant never had a prior opportunity to confront Dr. Kawesch with the tapes in front of a jury who could hear his responses and judge his demeanor. As the United States Supreme Court has long recognized, cross-examination means the accused must have the "opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (stating the defendant should "never lose the benefit of any of these safeguards even by the death of the witness"). *See also Crawford*, 541 U.S. at 57 ("The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination.").

Next, the Court notes that the strength of the Government's case against Defendant was not overwhelming. The Government's case was dependant on the testimony of Dr. Kawesch, a cooperating witness who received benefits from the Government, and Dr. Kawesch's covertly recorded statements of the Defendant. The defense case was dependent upon Defendant's testimony that he lacked specific intent and relied on Ryder and Dr. Kawesch in preparing the tax returns at issue. Essentially, the case came down to a credibility contest between Defendant and Dr. Kawesch. Therefore, the Defendant's ability to adequately impeach Dr. Kawesch was crucial to his defense. Because Defendant has forever lost his opportunity to impeach Dr. Kawesch with the withheld evidence, the Court finds a retrial would be substantially prejudicial. *See Chapman*, 524 F.3d at 1087 ("The district court is in the best position to evaluate the

strength of the prosecution's case and to gauge the prejudicial effect of a retrial.").

Finally, the Court finds that Defendant would be prejudiced by a retrial because it will allow the Government to revise its case strategy. This is an advantage the Government should not be permitted to enjoy, especially in light of the fact that the retrial was necessitated by the Government's conduct. *Chapman*, 524 F.3d at 1087 (noting mistrial remedy would advantage the government by giving it "a chance to try out its case[,] identify[] any problem area[s], and then correct those problems in a retrial").

In sum, the Court finds it is necessary to exercise its supervisory powers in this case. Defendant's Constitutional rights were violated by the Government's failure to disclose the tapes prior to trial. Because of the unique circumstances of Dr. Kawesch's death, there is no lesser remedy that can adequately cure the violation.

## IV. Conclusion

Based upon the foregoing, the Court finds dismissal of the indictment with prejudice is appropriate under the Court's supervisory powers. Accordingly, Defendant's Motion to Dismiss the Indictment is **GRANTED.**

**IT IS SO ORDERED.**

DATED: February 26, 2009

_____
M. James Lorenz
United States District Court Judge